UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOBBY MCADAMS, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-831 |
| | § | |
| MEDTRONIC, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Plaintiffs in this removal action filed a motion to remand this case to the state court. Dkt. 10. On July 6, 2010, the court denied plaintiffs' motion. Dkt. 53. Plaintiffs then filed a motion to reconsider. Dkt. 56. The court vacated its order denying the motion to remand and permitted additional briefing on the jurisdictional issue. Dkt. 58. Upon review of the original motion to remand, the motion for reconsideration, all relevant pleadings and supplemental pleadings, and the applicable law, the motion to reconsider (Dkt. 56) is GRANTED. It is further ordered that the motion to remand (Dkt. 10) is GRANTED, and this case is REMANDED to the state court forthwith.

## BACKGROUND

Plaintiffs' original state court petition contains state law claims against Medtronic, Inc., for products liability and negligence premised upon alleged manufacturing, design, and marketing defects in an intrathecal pain pump that Plaintiffs believe caused Tina McAdams to die of morphine toxicity three days after her discharge from the hospital following implantation of the pump. Dkt. 1, Exh. A at 37-40. Plaintiffs also asserted state law negligence claims against two other parties: (1) Gary Williams–a representative of Medtronic–who is alleged to have failed to properly program the pump prior to its implantation, and (2) Hattie Johnson–a nurse–who is alleged to have provided

incorrect discharge instructions to the deceased, and to have failed to communicate the deceased's need for further medical attention to physicians prior to discharge. *Id*. at 40-42.

Defendant Medtronic removed this matter on March 12, 2010, asserting federal question jurisdiction, and diversity jurisdiction predicated on an improper joinder argument. Plaintiffs' motion for remand was initially denied by the court, but now, upon reconsideration, the motion is granted.

## ANALYSIS

**A.   Federal question jursidiction.**

Federal courts have subject matter jurisdiction over any cause of action "arising under" federal law. 28 U.S.C. § 1331. Removal of an action within the court's original jurisdiction is permissible under 28 U.S.C. § 1441. "The federal removal statute . . . is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).

The "well-pleaded complaint rule" recognizes that a state court plaintiff is entitled to be master of his or her claims. Thus, as "a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058 (2003). No federal claim is alleged in the plaintiffs' original petition in the state court. Rather, plaintiffs assert state law claims for products liability and negligence.

There are exceptions to the "well-pleaded complaint rule." One such exception is the "complete preemption doctrine" where "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because 'the federal

statute so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all.'" *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008) (internal quotations and citations omitted). "The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *Id.* at 331. If so, "the state law cause of action is completely preempted, and federal jurisdiction exists." *Id*. Medtronic does not assert that complete preemption applies in this case. Rather, Medtronic asserts that this court has subject matter jurisdiction pursuant to another exception to the "well-pleaded complaint rule" that applies when the plaintiffs' "right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28, 203 S.Ct. 2841 (1983).

Indeed, Plaintiff's state law claims in this case expressly rely upon standards set forth in federal statutes regulating the medical-device industry by alleging, *inter alia*, that Medtronic was negligent in failing to comply with those standards. The intrathecal pain pump at issue in this case is a Class III Medical device under the Medical Device Amendments. 21 U.S.C. §§ 360c–m. The Medical Device Amendments ("MDA") of 1976 to the federal Food, Drug and Cosmetics Act establish processes for classification of and performance standards for medical devices, including the requirement that devices like the one at issue in this case be subjected to the FDA's "premarket approval" ("PMA") process. *Id.* The PMA process is a "rigorous" one that preempts state common-law causes of action that impose additional or different requirements. *Riegel v. Medtronic, Inc.,* 552 U.S.312, 317, 128 S. Ct. 999 (2008). However, a plaintiff may seek a damages remedy if the state duties "'parallel,' rather than add to, federal requirements." *Id.* at 330 (citing *Medtronic v. Lohr*, 518 U.S. 470, 470, 116 S. Ct. 2240 (1996)). The *Riegel* court did not elaborate on what constitutes a parallel claim, except to say that "§ 360 does not prevent a State from providing a damages remedy

for claims premised on a violation of FDA regulations." *Id.* In *Lohr,* the Court explained that parallel state claims "duplicate" federal requirements or impose duties "substantially identical" to those imposed by federal law. *Lohr*, 518 U.S. at 495–96. The state damages remedies in such cases "merely [provide] another reason for manufacturers to comply with identical existing 'requirements' under federal law." *Id.* at 496. Although *Riegel* did not describe "parallel claims," Fifth Circuit precedent prior to *Riegel*, and consistent with *Riegel's* holding, concluded that in "the context of the PMA process . . . state tort suits that allege, as the basis of their claim, that the approved FDA requirements have not been met are not preempted." *Martin v. Medtronic, Inc.*, 254 F.3d 573, 583 (5th Cir. 2001). Hence "a lawsuit that simply parallels or enforces the federal regulatory requirements without 'threatening' or interfering with them is not preempted." *Gomez v. St. Jude Medical Daig Div., Inc.*, 442 F.3d 919, 932 (5th Cir. 2006).

There are federal issues embedded in plaintiffs' state law claims because plaintiffs rely upon the MDA to establish the relevant standard of care. However, in a virtually identical case involving prescription drugs, the Supreme Court held that the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229 (1986) (negligence action based upon allegation that manufacturer violated federal statute regulating development and marketing of drugs not removable). Nonetheless, Medtronic relies upon the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mfg.*, for the proposition that removal is appropriate because the state court claims in this case "necessarily raise a stated federal issue [that is] actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. 308, 312, 125 S.Ct. 2363 (2005). *Grable* involved a state law quiet title action alleging that the

Internal Revenue Service gave inadequate notice of sale under applicable federal law, and removal was found appropriate. The Supreme Court later characterized *Grable* as one of a "special and small" category of cases removable on the basis that the only contested issue was a "pure issue of law" involving the proper interpretation of a federal statute, and one that would have the potential of governing numerous other tax lien cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699-700, 126 S.Ct. 2121 (2006) (state law subrogation claim by insurer of federal employees not removable despite federal regulation of health benefit plans). The court must determine whether this case falls within that "special and small" category of cases.

The Court of Appeals for the Fifth Circuit, after noting the "less than pellucid" guidance given by the Supreme Court with respect to the "substantial federal question doctrine," distilled a four-part test for its application in *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). Federal question jurisdiction under the substantial federal question doctrine exists "where (1) resolving a federal issue is necessary to the resolution of the state court claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Id*. Medtronic argues that a "substantial question of federal law" exists in this case because the underlying state law claims raised by plaintiffs are preempted by federal regulations governing the development, manufacture, and marketing of medical devices.

Medtronic begins by arguing that plaintiffs have not, in fact, alleged a "parallel" state law claim pursuant to *Riegel* and that plaintiffs' claims are each, individually, preempted by federal law. This issue of preemption is alleged to itself be a "substantial issue of federal law" sufficient to place this case within *Grable's* "special and small" category of cases. Medtronic fails to note, however, the distinction between the doctrine of "complete preemption," explained above, and the concept that

5

certain state law claims are subject to "preemption" as a defense. While "complete preemption" is a basis to invoke federal jurisdiction, "normal preemption" deals with a defense to a state court cause of action premised upon a conflict of law, and is not itself a basis for removal. *Sowell v. Int'l Bhd. of Teamsters*, 2009 WL 4255556, at *2 n.12 (S.D. Tex., November 24, 2009) (Weirlein, J.) (citing *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 275 n.34 (5th Cir. 2004)). Indeed, "an asserted or anticipated defense predicated on federal preemption of state law is, in jurisdictional terms, a defense like any other, and will not serve to invoke federal jurisdiction." *Powers v. United Food & Commercial Workers*, 719 F.2d 760, 764 (5th Cir. 1983) (citing *Franchise Tax Board*, 463 U.S. at 10, 203 S.Ct. 2341). Medtronic cannot invoke this court's jurisdiction by arguing that it has a "normal preemption defense" to plaintiffs' state law claims.

Nonetheless, Medtronic may succeed on its jurisdictional argument if it can establish that there are federal issues raised by plaintiffs' state law claims sufficient to present a "substantial federal question" under the four-part test set forth in *Singh*. Analysis of the four elements of the *Singh* test follows.

### 1. Federal issue necessary to resolution of the state law claim.

In the court's view, the embedded federal standards in plaintiffs' state law claims against Medtronic (the alleged failure to comply with FDA regulations) satisfy the first element of the test, which requires that a federal "issue" be necessary for resolution of the state law claims. Indeed, it appears that plaintiffs cannot prove their claims absent establishing that Medtronic failed to meet FDA standards.

### 2. Actual dispute.

The second element of the test also appears to be met. Although Medtronic has not specifically said so, it seems implicit in Medtronic's position that it claims that it did comply with all relevant FDA standards.

### 3. Substantial federal interest.

"Federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. In *Grable*, this was established because the only issue in the case was the proper interpretation of a federal tax statute. A ruling on the meaning of that statute, even in the context of a state court proceeding, was found to implicate a strong federal interest in the prompt collection of delinquent taxes by a federal agency, making the federal interest "substantial." 515 U.S. at 315. The Fifth Circuit in *Singh* provided an instructive contrast between the purely legal issue with potentially far-reaching implications present in *Grable*, and a largely factual, case-specific inquiry in the context of a legal malpractice claim:

> In contrast [to *Grable*], this case involves no important issue of federal law. Instead, the federal issue is predominantly one of fact–whether Singh had sufficient evidence that his trademark had acquired secondary meaning. Though obviously significant to Singh's claim, that issue does not require "resort to the experience, solicitude, and hope of uniformity that a federal forum offers." *Id.* at 312, 125 S.Ct. 2363.

*Singh*, 538 F.3d at 339. What was said about the nature of the federal issue in *Singh* is equally applicable in this case. Whether Medtronic complied with federal standards with respect to its intrathecal pump is important to Medtronic (and to plaintiffs), but there is no broader issue of federal law implicated.

7

The court's conclusion in this respect is also informed by the holding in *Empire Healthchoice Assurance*, 547 U.S. at 700-701.  In addressing a contract dispute with an "embedded" federal issue arising from federal regulation of the underlying health care coverage, the Court noted that "*Grable* presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'  In contrast, Empire's reimbursement claim . . . is fact-bound and situation specific."  *Id*.  Substantiality, therefore, is not established where the federal issue is not predominant, but is merely a backdrop for a largely factual dispute, as is the case here.

The Supreme Court's holding in *Merrell Dow* is almost directly on point in this respect.  The state law tort claim in that case relied explicitly upon a federal drug labeling statute, much as the state law claims here rely upon the standards set forth in the MDA.  The *Merrell Dow* manufacturer argued that the plaintiff's claims arose under federal law because the adequacy of the drug's labeling would need to be assessed pursuant to a substantive federal standard.  The Supreme Court, noting that Congress had not provided a private cause of action for violation of the labeling statute, found no substantial federal interest arising from the use in a state law tort case of a standard set forth in a federal statute.  478 U.S. at 814.  In this case, like *Merrell Dow*, there is no private cause of action created by the MDA, and this is an important indication that the federal interest is not substantial.  But this case goes one step further in that the MDA has specifically been interpreted to **permit** parallel state court claims.  *Riegel*, 552 U.S. at 330.  This, in the court's view, is a further indication that the federal interest in this matter is not substantial.  Medtronic has, accordingly, not identified a substantial federal interest in this case.

    **4.**    **The balance of federal and state judicial responsibilities.**

In *Singh*, the Fifth Circuit found that permitting legal malpractice claims to be brought into federal courts each time a lawyer is alleged to have committed malpractice with respect to a federal

claim would "constitute a substantial usurpation of state authority in an area [legal malpractice] in which state courts have traditionally been dominant." 538 F.3d at 340. The *Singh* court took guidance from the Supreme Court's comments in *Grable*, in turn distinguishing *Merrell Dow*, "'that a general rule of exercising federal jurisdiction over state [tort] claims resting on federal mislabeling and other statutory violations could thus have heralded a potentially enormous shift of traditionally state cases into federal courts.'" *Id*. (quoting *Grable*, 545 U.S. at 318). The Supreme Court has already declined to open the federal courts up to medical torts in the context of *Merrell Dow*, and this case is not distinguishable on any relevant basis. Indeed, allowing every state law tort claim that involves a medical device to be removed to federal court would result in precisely the type of "potentially enormous shift" of cases from the state to federal courts that the Supreme Court refused to permit in *Merrell Dow*.

As was the case in *Singh*, the first two elements of the test for a "substantial federal issue" have been met, but the third and fourth elements have not. Accordingly, federal question jurisdiction does not exist in this case, and removal was not proper on this basis.

**B.     Diversity Jurisdiction - Improper Joinder Standard**

To establish subject matter jurisdiction predicated on diversity, there must be complete diversity of citizenship among the parties, and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332. But, a case may be removed despite a non-diverse defendant, if that defendant was improperly joined, i.e. was named for the purpose of destroying diversity. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). The burden to demonstrate that federal jurisdiction is proper, and that the party was improperly joined, lies with the party seeking removal. *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). The Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability

9

of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

In order to determine if joinder is improper, the court must decide, based on the facts and the law, whether a state court could reasonably impose liability. *B, Inc.*, 663 F.2d at 549 (citing *Badon v. RJR Nabisco, Inc*., 236 F.3d 282, 286 (5th Cir. 2000); *Fields v. Pool Offshore Inc.*, 182 F.3d 353, 357 (5th Cir. 1999)). The Fifth Circuit has endorsed a Rule 12(b)(6)-like inquiry as the preferred methodology to determine whether joinder is proper. *Smallwood*, 385 F.3d at 573; *Travis*, 326 F.3d at 646-47. In considering 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S.Ct. 1955 (2007)). This plausibility standard requires the plaintiff to plead facts sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, the plaintiff must demonstrate "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

In *Smallwood*, the court also recognized that in certain cases discrete facts are missing from the plaintiff's pleading making a summary judgment-type inquiry more useful. 385 F.3d at 573. Here, however, the court sees no basis for going beyond the pleadings because no "discrete facts" are missing from the original petition.

There are two non-diverse defendants named in the original state court petition, and a "facially plausible" claim against either of them would require that this case be remanded to the state court.

### 1. Hattie Johnson

Plaintiffs allege that defendant Johnson, a nurse, discharged Tina McAdams without noticing or reporting to physicians that McAdams was being directed to continue taking morphine sulfate tablets along with the morphine she would be receiving through the newly-implanted device. Johnson is alleged to have breached a duty under state law to review the discharge instructions and to both recognize and report a potentially dangerous mistake to the treating physician.

Texas recognizes a "nurse-patient" relationship. *Lunsford v. Bd. of Nurse Exam'rs*, 648 S.W.2d 391, 394, 395 (Tex. App.–Austin 1983, no writ); *see also Steinkamp v. Caremark*, 3 S.W.3d 191, (Tex.App.–El Paso 1999, pet. denied) (finding issue of material fact precluding summary judgment with respect to claim that nurse was negligent in leaving portion of catheter in patient's vein, citing with approval to *Lunsford* for purposes of finding "nurse/patient" relationship created by Texas statute). In fact, the *Lunsford* court found that a nurse "has a duty to evaluate the medical status of the ailing person seeking his or her professional care, and to institute appropriate nursing care . . . ." 648 S.W.2d at 395. Plaintiffs have, accordingly, identified a duty and a breach thereof in alleging that Johnson should have reviewed Tina McAdams's medications upon discharge, noticed

11

the potential of an overdose, and reported that issue to a physician.[1] This is a facially plausible state law claim that destroys complete diversity.[2]

## CONCLUSION

Upon consideration of plaintiffs' motion to remand (Dkt. 10), plaintiffs' motion to reconsider (Dkt. 56), all relevant pleadings and supplemental pleadings, and the applicable law, the motion to reconsider (Dkt. 56) is GRANTED. It is further ordered that the motion to remand (Dkt.10) is GRANTED and this case is REMANDED to the state court forthwith.

It is so ORDERED.

Signed at Houston, Texas on September 29, 2010.

_____
Gray H. Miller
United States District Judge

---

[1] Medtronic's argument that Johnson had no authority to change McAdams's prescription, or to herself prescribe the proper level of medication, is irrelevant to the existence of a duty under state law for a nurse to review a patient's medications prior to discharge and to notice and report a potential overdose, which is the state law claim alleged in this case.

[2] There is, therefore, no need to determine whether plaintiffs state a facially plausible claim against Gary Williams.